UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| BitNile, Inc., | Case No. 22-cv-2911 (WMW/DLM) |
| Plaintiff, | |
| v. | **ORDER** |
| David Perrill; Drake Harvey, III; Kyle Wenzel; Brett Kittilstved and Breanna Baker, | |
| Defendants. | |

---

This matter is before the Court on Defendants David Perrill, Drake Harvey III, Kyle Wenzel, Brett Kittilstved and Breanna Baker's (collectively, "Defendants") motion to dismiss for failure to state a claim on which relief may be granted or, in the alternative, to stay the proceedings. For the reasons addressed below, the motion is denied in its entirety.

## BACKGROUND

Plaintiff BitNile, Inc., ("BitNile") is a cryptocurrency mining company, incorporated in Delaware with its principal place of business in Las Vegas, Nevada. Defendants Perrill, Harvey and Wenzel are current or former executives of Compute North LLC and Defendants Kittilstved and Baker are current or former employees of Compute North LLC. All Defendants are citizens of Minnesota. Compute North LLC, which is not a party to this lawsuit, provides "colocation services." In doing so, the company provides physical space for its customers' computer hardware along with related services, such as electrical power and internet connectivity.

In July 2022, Generate, a Compute North creditor, notified Compute North that Compute North had defaulted on a loan. BitNile alleges that this notice to Compute North means that each Defendant was aware no later than July 2022 that Compute North was at risk of losing control of its facilities. BitNile alleges that on August 3, 2022, Defendant Baker, who was allegedly aware of Compute North's loan default, stated in an email to BitNile that Compute North could accommodate 10 or 20 megawatts of capacity at its Wolf Hollow facility by September 2022. On August 10, 2022, BitNile alleges that Defendant Baker responded in an email to BitNile, "we are in a position to host the 20 [megawatts]" and indicated that the power supply was "formally available." BitNile alleges that Defendant Kittilstved sent an email to BitNile on August 11, 2022, stating that Compute North could "make 20 [megawatts] work" provided that BitNile's "equipment is all immediately available to send." On August 12, 2022, Generate took control of Compute North's Wolf Hollow facility and restricted the use of one of Compute North's bank accounts.

BitNile and Compute North executed two contracts on August 15, 2022: a Master Agreement and an Order Form. The Master Agreement, signed by Defendant Wenzel as a representative of Compute North, represented that the parties to the contract were authorized to execute the contract and that the contract did not violate the terms of any other contract. Also on August 15, 2022, BitNile alleges that Defendants Baker and Kittilstved emailed BitNile regarding BitNile's announcement of the contract between BitNile and Compute North. Among the statements in BitNile's announcement was a statement that BitNile "believe[s] that the [Master Agreement] will enable us to install

2

roughly 6,500 S19j pro miners[1] in the third quarter" of 2022. BitNile alleges that, because Generate controlled the Wolf Hollow facility when the Master Agreement was executed, Defendants were not authorized to issue a contract for the facility.

BitNile paid $2 million as a deposit to Compute North on August 22, 2022. In an email to BitNile on August 29, 2022, Defendant Baker advised that, because of extreme heat conditions, the Wolf Hollow facility's opening was delayed until mid-September. BitNile alleges that it shipped cryptocurrency mining equipment to Compute North between late August 2022 and the middle of September 2022. BitNile alleges that Defendant Baker notified BitNile of Compute North's bankruptcy on September 23, 2022, stating that the Wolf Hollow facility "continues to energize with no impact to the project." BitNile alleges that Defendant Baker told BitNile on September 28, 2022, that the mining equipment had been delivered to the Wolf Hollow facility and would be operational by the middle of October 2022.

BitNile initiated this lawsuit on November 15, 2022. BitNile alleges that Defendants knowingly made false representations of present facts to BitNile with the intention to induce BitNile to act in reliance on those misrepresentations. BitNile also alleges that Defendants fraudulently concealed material facts from BitNile. And BitNile alleges that Defendants engaged in a civil conspiracy to defraud BitNile. Defendants move to dismiss the complaint for failure to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6).

---

[1] S19j pro miners are central processing units that are powerful enough to perform the cryptocurrency mining operations.

## ANALYSIS

A complaint must allege sufficient facts such that, when accepted as true, it states a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a complaint fails to state a claim on which relief can be granted, dismissal is warranted. *See* Fed. R. Civ. P. 12(b)(6). When determining whether a complaint states a facially plausible claim, a district court accepts the factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). Factual allegations must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Mere "labels and conclusions" are insufficient, as is a "formulaic recitation of the elements of a cause of action." *Id.* at 555. And legal conclusions couched as factual allegations may be disregarded. *See Iqbal*, 556 U.S. at 679. Each of BitNile's causes of action is addressed, in turn, below.

A motion to dismiss must be decided based on the contents of the complaint alone. *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004). However, documents that are necessarily embraced by the complaint, documents attached to the complaint, and matters of public record can be considered. *Id.* A contract that establishes the basis of a claim in the lawsuit is embraced by the pleadings. *Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014) (citing *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n. 4 (8th Cir. 2003)). But a contract is not embraced by the complaint if the claims sound in tort, not contract law. *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992) (plaintiff's

4

complaint alleging wrongful termination and tortious interference with employment did not embrace the plaintiff's employment contract for purposes of a motion to dismiss).

Here, Defendants have attached to their memoranda several exhibits, including the Master Agreement and the Order Form between BitNile and Compute North. The complaint alleges tort claims, not contract claims, and does not include any documents as exhibits. The Court declines Defendants' request to consider materials outside of the complaint when ruling on the motion to dismiss. *See Enervations, Inc.*, 380 F.3d at 1069 ("[M]atters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss.")

A.

Defendants argue that BitNile fails to state a claim for fraud because the complaint pertains only to duties governed by the contract between BitNile and Compute North. Defendants also contend that the statements alleged by BitNile are "puffing" and therefore, are not actionable. Finally, Defendants argue that BitNile has not adequately alleged reliance on the alleged misrepresentations and, even if the complaint alleges reliance, several of the alleged misrepresentations occurred after BitNile signed the contract and therefore could not have induced BitNile to enter into the contract.

When pleading any fraud claim, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). A party bringing a fraud claim must "identify specifically the who, what, where, when, and how of the alleged fraud." *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006). The primary purpose of this particularity requirement is to "facilitate a defendant's ability to

5

respond and to prepare a defense to charges of fraud." *Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995). Rule 9(b) does not require a plaintiff to allege the precise details of every instance of fraud, as long as the complaint includes details that are sufficient to inform the defendant of the factual basis for the fraud claims. *Ransom v. VFS, Inc.*, 918 F. Supp. 2d 888, 898 (D. Minn. 2013).

To state a claim under Minnesota law for common-law fraudulent misrepresentation, a plaintiff must allege "(1) a false representation by [the defendant] of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made without knowing whether it was true or false; (3) with the intention to induce [the plaintiff] to act in reliance thereon; (4) that the representation caused [the plaintiff] to act in reliance thereon; and (5) that [the plaintiff] suffered pecuniary damages as a result of the reliance." *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 368 (Minn. 2009).

i.

Defendants first argue that the fraud claim is barred by Minnesota's independent-duty rule. BitNile counters that the independent-duty rule does not apply because Defendants are not parties to any contract with BitNile.

When a contract establishes a relationship between two entities, a plaintiff may recover tort damages only if the alleged tort is independent from the contractual relationship. *Wild v. Rarig*, 234 N.W.2d 775, 789-90 (Minn. 1975). A claim of fraud may be actionable if it is "based upon a misrepresentation that [is] outside of or collateral to the contract, such as many claims of fraudulent inducement." *AKA Distributing Co. v.*

6

*Whirlpool Corp.*, 137 F.3d 1083, 1086 (8th Cir. 1998). An allegation of fraud that implicates a term of a contract is not independent. *Id.* at 1087 ("The fraud claim is that Whirlpool lied when it said AKA would be a distributor for a long time. But duration was a term of the contract, and breach of that term was the basis for AKA's time-barred contract claim.") In contrast, misrepresenting business plans in a manner that devalues a contract is "the sort of collateral subject that can support an independent fraud-in-the-inducement claim." *Id.* Whether to dismiss a claim based on the independent-duty rule turns on the Court's ability to conclude as a matter of law that the contract completely defines the relationship between the parties. *See Blue Cross & Blue Shield of N. Carolina v. Rite Aid Corp.*, 519 F.Supp.3d 522, 546 (D. Minn. Feb. 9, 2021).

Here, Defendants move to dismiss BitNile's common-law fraud claim because, Defendants assert, the complaint alleges only breaches of duties owed under the contract between BitNile and Compute North. Defendants argue that each of the allegedly misrepresentative statements directly pertains to Compute North's ability to fulfill its obligations under the contract. BitNile responds that the contractual duties do not pertain to Defendants because Defendants are not parties to the contract. Even if Defendants were bound by the duties of the contract, BitNile contends, fraudulently inducing another to enter into an agreement is a tort independent of any contractual duty.

On a motion to dismiss, the Court confines its analysis to the four corners of the complaint and does not assess Defendants' characterization of the contracts between BitNile and Compute North. BitNile alleges that either Defendants' statements were not preempted by the contracts or Defendants' actions are an independent tort. Because

7

BitNile's plausible allegations of independence are sufficient at this stage of the proceedings, the Court denies the motion to dismiss on this basis.

ii.

Defendants next argue that the allegedly misleading statements are inactionable "puffing" statements or predictions of future circumstances. BitNile disagrees, contending that the statements were promises of performance and, therefore, actionable.

To plead a claim of fraud, the plaintiff must allege a past or present fact. *Hoyt Props., Inc. v. Prod. Res. Grp., LLC.*, 736 N.W.2d 313, 318 (Minn. 2007). However, Minnesota law permits fraud claims based on a "misrepresentation of a present intention" to act a certain way in the future. *Valspar Refinish, Inc.*, 764 N.W.2d at 368-69 (citing *Vandeputte v. Soderholm*, 216 N.W.2d 144, 147 (Minn. 1974)). Without more, the failure to carry out a promise to act a certain way in the future does not constitute fraud. *Exeter Bancorporation, Inc. v. Kemper Sec. Grp., Inc.*, 58 F.3d 1306, 1312 (8th Cir. 1995). Instead, there must be evidence that, when making the promise, the promisor had no intention of keeping the promise. *Id*. The critical determination in this analysis is when the promisor decided to renege on the promise. *H.J., Inc. v. Int'l Tel. & Tel. Corp.*, 867 F.2d 1531, 1547 (8th Cir. 1989); *see also Exeter Bancorporation*, 58 F.3d at 1313 (finding that the plaintiff presented no evidence tending to show that at the time the defendant made the allegedly fraudulent statements, defendant had already concluded that defendant would dishonor its promises).

Here, Defendants argue that the statements BitNile alleges are fraudulent were predictions of future circumstances, not promises. BitNile disagrees, arguing that the

8

complaint adequately alleges that Defendants' statements were promises to provide services and that Defendants knew when they made the statements that Defendants and Compute North lacked the ability to perform the services.

The allegedly fraudulent statements pertain to the future activities of hosting the computer hardware and providing electricity and internet connectivity. But the statements reveal Defendants' intentions at that time regarding their ability to follow through on those activities. For example, the August 3, 2022 email from Defendant Baker told BitNile that "We can accommodate 10 or 20MW of capacity" at the Wolf Hollow facility. The August 11, 2022 email from Defendant Kittilstved told BitNile that Defendants could "make 20 MW work [. . .] if this equipment is all immediately available to send." These statements go beyond speculation about the potential impact of Defendants' services. Instead, the statements convey Defendants' intent to follow through on their performance of future conduct.

For the statements to be actionable under a fraud claim, BitNile also must plausibly allege that Defendants did not intend to keep that promise at the moment they made the promise. *See Exeter Bancorporation*, 58 F.3d at 1312. BitNile alleges that Generate's default notice to Compute North in July made Defendants aware that they were at risk of losing control of their facilities and, therefore, becoming unable to perform as Defendants promised. On a motion to dismiss, the Court views the complaint in the light most favorable to BitNile. BitNile has plausibly alleged that Defendants had no intention of carrying out their promises at the time they made them. Therefore, the Court denies the motion to dismiss on this ground.

iii.

Defendants argue that, when signing the Master Agreement and the Order Form, BitNile could not have relied on the allegedly fraudulent statements that were made after the parties entered the Master Agreement and Order Form.  BitNile concedes this point.  But BitNile responds that the complaint alleges that Defendants' fraudulent statements after the contracts were executed induced BitNile to spend millions of dollars to ship computer equipment to the Wolf Hollow facility between late-August and mid-September 2022.  Defendants contend that, because BitNile was contractually obligated to spend the money and ship the equipment, BitNile could not be induced to take those actions.

Actual and reasonable reliance are required to establish a claim of fraudulent misrepresentation.  *Hoyt Props., Inc.*, 736 N.W.2d at 320-21.  Actual reliance requires the plaintiff to show that the plaintiff "took action or failed to take action[] that [the plaintiff] would not have otherwise."  *Greeley v. Fairview Health Services*, 479 F.3d 612, 614-15 (8th Cir. 2007).  The reasonableness of a party's reliance ordinarily is a fact issue.  The Minnesota Supreme Court, however, has held that "a party can reasonably rely on a representation unless the falsity of the representation is known or obvious to the listener." *Hoyt Props., Inc.*, 736 N.W.2d at 321 (citing *Spiess v. Brandt*, 41 N.W.2d 561, 566 (Minn. 1950)).

Here, the complaint clearly alleges that BitNile was obligated to deliver the hardware equipment to the Wolf Hollow facility after signing the Master Agreement and the Order Form.  By BitNile's admission, the contracts required BitNile to deliver the equipment to Compute North.  Although the complaint alleges that delivery of the

equipment took several weeks between late-August and mid-September, and that Defendants made allegedly misrepresenting statements during that time, BitNile could not have relied on those statements to send the equipment. Nevertheless, this is not a basis to dismiss the fraud claim because the complaint, as addressed above, plausibly alleges that the August 3, 2022 email and the August 11, 2022 email induced BitNile to enter into the contracts. Even without Defendants' post-contract statements, the complaint satisfies the requirements of reliance on Defendants' representations.

Defendants also contend that BitNile's reliance was not reasonable because the Master Agreement, according to Defendants, contains an integration clause. As addressed earlier in this Order, the contracts are not necessarily embraced by the complaint in this case, and they are not before the Court on this motion. Because BitNile has adequately pleaded reliance, the Court denies the motion to dismiss on this basis.

iv.

Defendants argue that the claims against Perrill, Harvey and Wenzel (the current or former executives of Compute North) should be dismissed because BitNile has not adequately pleaded fraud liability under scheme or control theories. BitNile concedes that it does not rely on a scheme theory of liability. Rather, BitNile asserts that it has alleged with sufficient particularity that Defendants Perrill, Harvey and Wenzel directed the other Defendants to make misrepresentations and omissions.

The officers of a business may be liable for the fraud committed by the employees of that business if the officers participated in the fraud, directed the employees to commit the fraud, or were negligent in failing to prevent or uncover the fraud. *Morgan v. Eaton's*

11

*Dude Ranch*, 239 N.W.2d 761, 762 (Minn. 1976).  The United States Court of Appeals for the Eighth Circuit has recognized that "[w]here a plaintiff is not a party to a communication, particularity in pleading may become impracticable."  *Abels v. Famers Commodities Corp.*, 259 F.3d 910, 921 (8th Cir. 2001).  In that situation, it is proper to allow the plaintiff an opportunity to discover the requisite particular facts that "remain within the defendants' private knowledge." *Id.*

BitNile alleges that Defendants Perrill, Harvey and Wenzel directed the other Defendants to convey specific allegedly misleading statements to BitNile.  For example, BitNile alleges that "at the direction of [Defendants Perrill, Harvey and Wenzel], the other Defendants made repeated misrepresentations to, and omitted material information from, [BitNile] in order to induce [BitNile] to enter into an agreement with Compute North . . . ." Although BitNile has not had access to the communications that directed some Defendants to make misleading statements, this is the type of allegation that the Eighth Circuit contemplated when it described facts that were "within the defendants' private knowledge." *Id.*  It would be impossible for BitNile to plead with particularity the contents of the communications that directed some Defendants to make the misleading statements, but that does not foreclose BitNile's claims at this stage.  For these reasons, the Court denies Defendants' motion to dismiss on this ground.

v.

Defendants argue that BitNile's request for damages is not justiciable because Compute North is the entity that could be liable for damages related to the mining equipment, and those claims would need to be resolved in Compute North's bankruptcy

12

proceedings. BitNile argues that it does not seek the return of the mining equipment through this action, but it seeks damages as a result of the alleged fraud and conspiracy.

Defendants' justiciability argument is unavailing. The complaint does not request the return of the equipment. The complaint plainly seeks damages for the fraud and the conspiracy, not for breach of contract. Because Defendants have provided no legal basis to dismiss BitNile's fraudulent misrepresentation claim on this ground, the Court denies Defendants' motion.

B.

Defendants next seek dismissal of BitNile's fraudulent concealment claim, arguing that it is impermissibly duplicative of the common law fraud claim. Defendants also contend that the fraudulent concealment claim is insufficiently pled because it fails to allege that Defendants owed BitNile a duty to disclose certain information.

Under Minnesota law, a claim of fraudulent concealment has the same elements as other fraud claims plus the element "that the defendant had 'a legal or equitable obligation' to communicate facts to a particular person and that person is entitled to the information." *Zimmerschied v. JP Morgan Chase Bank, N.A.*, 49 F.Supp.3d 583, 595 (D. Minn. 2014) (quoting *Heidbreder v. Carton*, 645 N.W.2d 355, 367 (Minn. 2002)). As a general rule, "one party to a transaction has no duty to disclose material facts to the other party." *Graphic Commc'ns Loc. 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 850 N.W.2d 682, 695 (Minn. 2014). But under "special circumstances," a duty to disclose material facts may arise. The Minnesota Supreme Court has identified three examples of such special circumstances:

13

> First, a person who has a confidential or fiduciary relationship with the other party to the transaction must disclose material facts. Second, one who has special knowledge of material facts to which the other party does not have access may have a duty to disclose those facts to the other party. Third, a person who speaks must say enough to prevent the words communicated from misleading the other party.

*Id.* (citations omitted).

The Eighth Circuit draws a clear distinction between claims of fraudulent misrepresentation and fraudulent concealment. To state a claim for fraudulent concealment, the plaintiff must plead a deliberate concealment of a material fact. In contrast, a claim of fraudulent misrepresentation requires a pleading of an affirmative statement of material fact. *Iverson v. Johnson Gas Appliance Co.*, 172 F.3d 524, 529 (8th Cir. 1999).

Here, Defendants first argue that the fraudulent concealment claim is the same as the fraudulent misrepresentation claim and must be dismissed. BitNile contends that the two claims are distinct because the fraudulent misrepresentation claim relies on Defendants' affirmative statements whereas the concealment claim relies on withheld information. Defendants also contend that the complaint fails to allege a duty to disclose owed by Defendants to BitNile. BitNile disagrees, arguing that a duty to disclose arises from Defendants' obligation to avoid misleading BitNile after Defendant had allegedly asserted Compute North's ability to perform the contract. Additionally, BitNile argues that the duty to disclose arises because Defendants had access to special knowledge of material facts.

BitNile alleges specific information that Defendants did not disclose that BitNile contends was material to the relationship between BitNile and Compute North. Specifically, BitNile alleges that Defendants had information about Compute North's solvency and the company's relationship with Generate, the creditor that took control of the Wolf Hollow facility days before the Master Agreement went into effect. This allegation is separate from the affirmative statements that Defendants allegedly made about the timeline for being able to support BitNile's hardware. Although the omission claim and the affirmative misrepresentation claim arise from a single relationship, the two claims are distinct as detailed by Eighth Circuit precedent. *See Iverson*, 172 F.3d at 529 (explaining the different pleading standards for fraudulent omission and fraudulent misrepresentation). For this reason, the Court denies Defendants' motion to dismiss on this basis.

As to whether Defendants owed BitNile a duty to disclose information that it concealed, BitNile alleges in the complaint that Generate notified Compute North (and, by extension, Defendants) in July 2022 about a possible default that would result in Compute North losing control of its Wolf Hollow facility. BitNile argues that Defendants misled BitNile by offering repeated assurance that Compute North could carry out its contract obligations after it became clear that Generate might take control of the Wolf Hollow facility. Although the complaint does not allege any communication between the date of Generate's takeover and the execution of the contracts, BitNile has adequately alleged that Defendants had an obligation to disclose their special knowledge of material facts to which

15

BitNile did not have access. For these reasons, the Court denies this aspect of the motion to dismiss.

C.

Defendants move to dismiss the civil conspiracy claim, arguing that there is no tort underlying the claim and the pleadings fail to allege an agreement or concerted action by Defendants. BitNile contends that it has sufficiently alleged a claim for the tort of fraud. BitNile also argues that the allegations pertaining to conspiracy, unlike those pertaining to fraud claims, need not be pled with particularity.

Conspiracy "involves a combination of persons to accomplish an unlawful purpose or a lawful purpose by unlawful means." *Anderson v. Douglas County*, 4 F.3d 574, 578 (8th Cir. 1993) (citing *Harding v. Ohio Cas. Ins. Co.*, 41 N.W.2d 818, 824 (Minn. 1950)). Because civil conspiracy is a theory of liability and not an independent claim, a tortious act must underlie a claim of civil conspiracy. *Leiendecker v. Asian Women United of Minn.*, 848 N.W.2d 224, 228 n.2 (Minn. 2014). Acknowledging the clandestine quality inherent in many conspiracies, the Eighth Circuit has concluded that it is not always necessary for a plaintiff "to allege with precision the specific facts giving rise to the claim." *White v. Walsh*, 649 F.2d 560, 561 (8th Cir. 1981).

Here, BitNile alleges that Defendants communicated among themselves regarding messages that they sent to BitNile and that certain defendants directed other defendants to convey specific information. BitNile also alleges that Defendants took these actions for the purpose of committing fraud against BitNile. In light of the clandestine nature of a conspiracy and the dearth of information available to BitNile at this early stage of the

16

proceedings regarding the communications between Defendants, it is not reasonable to expect BitNile to allege precisely what communications established the conspiracy. Therefore, the Court denies the motion to dismiss the civil conspiracy claim.

D.

Defendants alternatively request that the Court exercise its discretion to stay this matter until Compute North's bankruptcy proceedings in the Southern District of Texas are resolved. Defendants make three arguments in support of their request for a stay. First, Defendants contend that this lawsuit is BitNile's attempt to jump to the front of the line of Compute North's creditors and avoid participation in the bankruptcy proceedings. In response, BitNile argues that the resolution of the bankruptcy matter will not control this case as Defendants are not parties to the bankruptcy and Defendants' tort liability will not be resolved by the bankruptcy. Second, Defendants argue that BitNile seeks the same damages in the bankruptcy proceedings that it seeks in this action. Plaintiff responds that the damages it seeks in this action are distinct from the contract-based damages it seeks in the bankruptcy. Third, Defendants maintain that both Defendants' role in facilitating Compute North's restructuring and BitNile's participation in the bankruptcy proceedings counsel in favor of allowing the bankruptcy process to resolve before advancing this case. In response, BitNile contends that any equitable extension of a bankruptcy stay to non-debtor parties would be inappropriate based on the law of the bankruptcy court. *See Beran v. World Telemetry, Inc.*, 747 F. Supp. 2d 719, 724 (S.D. Tex. 2010) (explaining that an expansion of a bankruptcy stay to include non-debtor parties is only appropriate if there is an actual identity of interests among the parties).

The Eighth Circuit has not addressed the question of whether a district court may properly expand a bankruptcy stay to non-debtor parties without first involving the bankruptcy court. The Eighth Circuit is clear, however, that courts should be reluctant to extend the scope of a bankruptcy stay to parties other than the debtor. *In re Panther Mountain Land Development, LLC*, 686 F.3d 916, 921 (8th Cir. 2012); *C.H. Robinson Co. v. Paris & Sons, Inc.*, 180 F. Supp. 2d 1002, 1005 (N.D. Iowa 2001) ("Eighth Circuit caselaw . . . is illustrative of a generalized reluctancy to expand the scope of the automatic stay provision of the Bankruptcy Code and to limit any expansion to truly extraordinary cases."). However, a federal district court has the inherent power to stay the proceedings of an action, in order to control the Court's docket, to conserve judicial resources, and to provide for the just determination of cases that are pending before the district court. *Kemp v. Tyson Seafood Grp., Inc.*, 19 F.Supp.2d 961, 964 (D. Minn. May 5, 1998) (citations omitted). This power exists independently of any automatic bankruptcy stay that may apply. When deciding whether to stay proceedings, courts have broad discretion. *See Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citing *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)).

Neither party suggests, nor does the Court conclude, that an automatic stay under the bankruptcy code applies in this case. The only basis for a stay, therefore, would be under the Court's discretionary authority to manage its docket, conserve resources of the court and advance the interests of justice for the case pending. Defendants suggest that the bankruptcy litigation and this case have relevant facts in common. Assuming this is true and the Court stays this case, active monitoring of the bankruptcy case would be required

18

to determine when to lift the stay. Such an arrangement would expend judicial resources and hamper the Court's ability to efficiently manage its docket. The interests of the bankruptcy litigation are distinct from the interests of the lawsuit before this Court. It is in the interest of this Court to ensure that this case proceeds efficiently. For these reasons, Defendants' request for a stay is denied.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that the motion to dismiss of Defendants David Perrill, Drake Harvey III, Kyle Wenzel, Brett Kittilstved and Breanna Baker, (Dkt. 24), is **DENIED**.

Dated: September 5, 2023                  s/Wilhelmina M. Wright
                                                        Wilhelmina M. Wright
                                                        United States District Judge